**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER B. NASH, | Case No. EDCV 14-2523 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Christopher B. Nash ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.

　
For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

## II.

### PROCEDURAL HISTORY

On November 15, 2011, Plaintiff filed an application for DIB, claiming that he became disabled on March 6, 2011. (Administrative Record ("AR") 134-38). Plaintiff based his alleged disability on a back injury, bilateral carpal tunnel, coal miner's fracture of the neck, and right foot numbness. (AR 159, 252). The Agency denied Plaintiff's application on February 23, 2012 (AR 77-81) and upon reconsideration on August 21, 2012. (AR 84-89).

Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Marti Kirby on June 17, 2013 (the "ALJ Hearing"). (AR 37-74). Vocational expert ("VE") Ronald Hatakeyama also testified. (AR 65-72). On June 28, 2013, the ALJ issued an unfavorable decision. (AR 22-33). Plaintiff sought review before the Appeals Council (AR 90-91), which the Council denied on October 9, 2014. (AR 1-4). The ALJ's determination thus became the final decision of the Commissioner. Plaintiff filed the instant action on December 8, 2014.

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

3

1             the claimant is found disabled.  If not, proceed

2             to step four.

3     (4)   Is the claimant capable of performing his past

4             work?  If so, the claimant is found not disabled.

5             If not, proceed to step five.

6     (5)   Is the claimant able to do any other work?  If

7             not, the claimant is found disabled.  If so, the

8             claimant is found not disabled.

9

10   Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,

11   262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20

12   C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

13

14      The claimant has the burden of proof at steps one through

15   four, and the Commissioner has the burden of proof at step five.

16   Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an

17   affirmative duty to assist the claimant in developing the record

18   at every step of the inquiry.  Id. at 954.  If, at step four, the

19   claimant meets his burden of establishing an inability to perform

20   past work, the Commissioner must show that the claimant can

21   perform some other work that exists in "significant numbers" in

22   the national economy, taking into account the claimant's residual

23   functional capacity ("RFC"), age, education, and work experience.

24   Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20

25   C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do

26   so by the testimony of a VE or by reference to the Medical-

27   Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

28   Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel,

1  240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both

2  exertional (strength-related) and non-exertional limitations, the

3  Grids are inapplicable and the ALJ must take VE testimony.  Moore

4  v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v.

5  Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

6

7                               IV.

8                       THE ALJ'S DECISION

9

10      The  ALJ  employed  the  five-step  sequential  evaluation

11 process.   At step one, the ALJ found that Plaintiff had not

12 engaged in substantial gainful employment since his alleged onset

13 date of March 6, 2011.  (AR 24).  At step two, the ALJ found that

14 Plaintiff  had  the  severe  physical  impairments  of  below  knee

15 amputation of the left leg (with prosthesis), degenerative disc

16 disease  and  degenerative  joint  disease  of  the  cervical  spine,

17 degenerative disc disease of the lumbar spine, status post lumbar

18 fusion  in  June  2011,  bilateral  carpal  tunnel  syndrome,  status

19 post  carpal  tunnel  release  in  June  2011,  bilateral  shoulder

20 impingement, and obesity.  (Id.).

21

22      At step three, the ALJ found that Plaintiff did not have an

23 impairment  or  combination  of  impairments  that  met  or  medically

24 equaled  the  severity  of  an  impairment  listed  in  20  C.F.R.  Part

25 404,  Subpart  P,  Appendix  1  (20  C.F.R.  §§  416.920(d),  416.1525,

26 404.1526).  (AR 25).  The ALJ also noted that there is no medical

27 listing  for  obesity  and  found  that  Plaintiff's  obesity  did  not

28 result  in  the  "severity  of  symptoms  required  to  meet  or  equal  a

1    medical listing." (Id.).  The ALJ then found that Plaintiff had
2    the following RFC:

3

4         [Plaintiff] has the residual functional capacity to
5         perform light work as defined in 20 CFR 404.1567(b)
6         except [Plaintiff] can lift and/or carry 20 pounds
7         occasionally and 10 pounds frequently; he can stand
8         and/or walk for 2 hours out of an 8-hour workday with
9         regular breaks, but for no more than 20 to 30 minutes
10        at a time; he can sit for 6 hours out of an 8-hour
11        workday with regular breaks, but with brief position
12        changes after 30 to 45 minutes; he can occasionally
13        bend, stoop, climb stairs, and balance; he cannot
14        kneel, crawl, squat, or crouch; he cannot climb
15        ladders, ropes, or scaffolds; he cannot work at
16        unprotected heights, around moving machinery, or
17        around other hazards; he should avoid moderate
18        exposure to vibration and walking on uneven terrain;
19        he cannot repetitively or constantly push and/or pull
20        with the lower extremities; he can occasionally
21        perform overhead work; he cannot repetitively or
22        constantly perform gross or fine manipulation with the
23        dominant right hand; he cannot repetitively or
24        constantly move his head or neck, especially up and
25        down; he cannot keep his neck in a static or neutral
26        position for more than 2 hours at a time; he cannot
27        perform jobs requiring hypervigilance or intense
28        concentration on a particular task; and he can have

                                6

1        occasional contact with the general public, due to
2        chronic pain and irritability.

3

4    (Id.).

5

6        In making this finding, the ALJ considered Plaintiff's
7    subjective allegations, but did not find them fully credible.
8    (AR 26-27).  The ALJ also rejected Plaintiff's treating physician
9    Darren L. Bergey's opinion that Plaintiff could lift, push, and
10   pull no more than ten pounds, he could not perform overhead work
11   or climb, and he would be absent from work more than three times
12   a month.  (AR 30).

13

14       At step four, the ALJ found that Plaintiff was unable to
15   perform past relevant work as a line installer.  (AR 31).  At
16   step five, the ALJ found that, considering Plaintiff's age,
17   education, work experience and RFC, he could perform jobs that
18   exist in significant numbers in the national economy.  (AR 32).
19   Based on the VE's testimony, the ALJ concluded that Plaintiff
20   could perform the requirements of lens inserter, bench assembler,
21   and addresser.  (Id.).  Accordingly, the ALJ found that Plaintiff
22   was not disabled.  (AR 33).

23

24

25

26

27

28

# V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set the decision aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1997)).

To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for the Commissioner's. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

1
                                          **VI.**

2
                                  **DISCUSSION**

3

4
      **The ALJ Failed To Properly Consider The Opinion Of**

5
      **Plaintiff's Treating Physician**

6

7
    Plaintiff asserts that the ALJ failed to provide specific

8
and legitimate reasons for rejecting the opinion of his treating

9
physician, Dr. Bergey. (Plaintiff's Memorandum in Support of

10
Complaint (the "MSC"), Dkt. No. 14, at 6). The Court agrees.

11

12
    An ALJ must afford the greatest weight to the opinion of the

13
claimant's treating physician. The opinions of treating

14
physicians are entitled to special weight because the treating

15
physician is hired to cure and has a better opportunity to know

16
and observe the claimant as an individual. Connett v. Barnhart,

17
340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d

18
947, 956-57 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747,

19
751 (9th Cir. 1989). Where the treating doctor's opinion is not

20
contradicted by another doctor, it may be rejected only for

21
"clear and convincing" reasons. Lester v. Chater, 81 F.3d 821,

22
830 (9th Cir. 1995) (as amended). Even if the treating

23
physician's opinion is contradicted by another doctor, the ALJ

24
may not reject this opinion without providing specific,

25
legitimate reasons, supported by substantial evidence in the

26
record. Id. at 830-31; see also Orn v. Astrue, 495 F.3d 625, 632

27
(9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198

28
(9th Cir. 2008).

1    Dr. Bergey, an orthopedic spine surgeon, treated Plaintiff
2    from September 2010 to April 2013.  (See AR 201-51, 290-373, 404-
3    18, 424-47, 517-30, 605-753).[1]    At the initial evaluation,
4    Plaintiff reported having "lower back and mid back pain and
5    stiffness with occasional numbness down his right leg." (AR
6    367).  As a result, Dr. Bergey recommended diagnostic facet
7    blocks at L4 through S1.   (Id.).  In January 2011, despite
8    receiving the diagnostic facet blocks, Plaintiff continued to
9    have back and leg pain.  (AR 360-62).  In February 2011, Dr.
10   Bergey opined that Plaintiff was a surgical candidate and
11   requested authorization for an "L4-5 and L5-S1 discectomy and
12   fusion with cage and instrumentation[] and L4-5, L5-S1 bilateral
13   decompression surgery with anterior and posterior fusion." (AR
14   251).  In June 2011, Plaintiff underwent the surgery, as well as
15   a left carpal tunnel release.  (See AR 240, 489-90).

16

17   Dr. Bergey then treated Plaintiff with several appointments
18   between July 2011 through April 2013.   (See AR 226-29 (July
19   2011); AR 222-24 (September 2011); AR 213-17 (October 2011); AR
20   208-12 (November 2011); AR 305-13 (February 2012); AR 298-304
21   (June 2012); AR 290-97 (July 2012); AR 444-47 (October 2012); AR
22   438-43 (December 2012); AR 433-37 (January 4, 2013); AR 429-32
23   (January 9, 2013); AR 424-28 (March 2013); AR 414-18 (April 9,
24   2013); AR 405-09 (April 19, 2013)).  During that time, Dr. Bergey
25   treated Plaintiff not only for continuing back pain, but also for

26

27   [1] The administrative record contains multiple copies of Dr.
     Bergey's reports.  The Court will not cite each instance these
28   documents appear in the record.

10

additional impairments related to his neck, shoulders, and right hand/wrist.  (Id.).

On April 23, 2012, Dr. Bergey completed a "Physical Residual Functional Capacity Questionnaire."  (AR 264-68).  After treating Plaintiff for an extended period of time, Dr. Bergey made several conclusions regarding Plaintiff's limitations.   Dr. Bergey described Plaintiff's prognosis as "poor."   (AR 264). Plaintiff's symptoms were described as "low back pain and stiffness . . . numbness right foot and bilateral lower extremity numbness and tingling; restricted range of movement; [increased] pain [with] overhead activity."   (Id.).   Dr. Bergey rated Plaintiff's pain as "8/10". He noted that "pain and stiffness [increases] [with] bending, sitting and standing; looking up increases neck pain."   (Id.).   For clinical findings and objective signs, Dr. Bergey wrote: "[T]enderness over the occipital region of the l/spine.   Restricted ROM l/spine. Orthopedic testing increases local neck pain."  (AR 254-265). Dr. Bergey stated that the impairments could be expected to last "at least twelve months."  (AR 265).  Dr. Bergey found that Plaintiff's pain or other symptoms would "constantly" interfere with attention and concentration.  (Id.)

Dr. Bergey opined that Plaintiff could sit and stand for less than two hours in an eight-hour workday and walk only one block without resting and sitting.  (AR 266).  Plaintiff would also need to walk around every thirty minutes for fifteen minutes in an eight-hour workday.  (Id.).   He would need to shift

1  positions from sitting, standing or walking. (<u>Id.</u>). With

2  prolonged sitting, he would need to elevate his legs. (AR 267).

3  He would also need unscheduled breaks three to four times a day

4  for fifteen minutes. (<u>Id.</u>). Plaintiff could occasionally lift

5  ten to twenty pounds. (<u>Id.</u>). He could also only bend and twist

6  25% of the time during an eight-hour workday. (<u>Id.</u>). Finally,

7  Plaintiff would need to be absent from work twice a month due to

8  his impairments and treatment. (AR 268).

9

10     Between February 2012 and January 2013, due to Plaintiff's

11  impairments, Dr. Bergey opined that Plaintiff was "temporarily

12  partially disabled" and "prescribed modified duty" of "[n]o

13  lifting, pushing, pulling greater than 10lbs," "[n]o overhead

14  work," and "[n]o climbing." (AR 292, 303, 312, 436, 447). In

15  January 2013, Dr. Bergey opined that Plaintiff's persistent

16  bilateral shoulder pain "failed to improve with conservative

17  care." (AR 431). In March 2013, Dr. Bergey's diagnoses of

18  Plaintiff's impairments included C3-4 disc degeneration, C3-4

19  facet arthropathy, C spinous process fracture, bilateral carpal

20  tunnel syndrome, L4 through S1 facet arthropathy, L4 through S1

21  disc degeneration, right leg radiculopathy, bilateral shoulder

22  impingement syndrome, status post left carpal tunnel release, and

23  status post L4-S1 anterior and posterior fusion with cage and

24  instrumentation. (AR 416-17). In March 2013, Dr. Bergey also

25  declared Plaintiff "[t]emporarily [t]otally [d]isabled" due to

26  ongoing "back/leg pain intolerance" and until Plaintiff could get

27  "better control of his pain." (AR 426). In April 2013, the last

28  record of treatment before the hearing, Dr. Bergey noted that

1   Plaintiff's right shoulder MRI scan revealed mild supraspinatus
2   and infraspinatus tendinosis, tearing of the posterior superior
3   posterior labrum with adjacent para labral cyst, and moderate AC
4   arthrosis. (AR 407, 416). Dr. Bergey also observed that an EMG
5   revealed right carpal tunnel. (AR 408). Based on the objective
6   medical findings and ineffectiveness of conservative care, Dr.
7   Bergey recommended that Plaintiff undergo right shoulder surgery
8   and a right carpal tunnel release. (Id.).

9

10      In a June 5, 2013 "Physical Residual Functional Capacity
11   Questionnaire," Dr. Bergey diagnosed Plaintiff with C3-4 disc
12   degeneration, C3-4 facet arthropathy, C6 spinous process
13   fracture, and bilateral carpal tunnel syndrome. (AR 749-53).
14   Dr. Bergey noted that Plaintiff's impairments were being treated
15   with physical therapy, pain management and pain medications
16   including Nucynta, Percocet and Xanax. (AR 750). He also opined
17   that Plaintiff would need to be absent from work more than three
18   times a month due to his impairments or treatment. (AR 753).

19

20      The ALJ gave "little weight" to "Dr. Bergey's opinions from
21   2012 and 2013 that [Plaintiff] could lift, push, and pull no more
22   than 10 pounds; he could not perform overhead work or climb; and
23   he could be absent from work more than 3 times a month." The ALJ
24   found that these opinions were "not consistent with the objective
25   evidence as a whole." (AR 30-31). The ALJ further rejected Dr.
26   Bergey's opinion because:

27

28

1      After surgery, physical examinations showed some
2      improvement with [Plaintiff's] lumbar spine.     He
3      stopped exhibiting diminished sensation, but continued
4      showing lumbar paravertebral tenderness.     Moreover,
5      [Plaintiff] was only conservatively treated with pain
6      medications after surgery.    In addition, [Plaintiff]
7      acknowledged he stopped taking medications in December
8      2011 and was able to perform household chores.     He
9      admitted lumbar surgery decreased his back pain.

10

11   (AR 30-31) (internal citations omitted).

12

13      The ALJ found that Dr. Bergey's statement that Plaintiff was
14   "temporarily totally disabled" had "no probative value."     In
15   particular, the ALJ found this statement inconsistent with the
16   objective medical evidence.    Furthermore, the ALJ concluded that
17   because Drs. Bergey and Suzuki examined Plaintiff "in the context
18   of a workers compensation claim," the credibility and relevance
19   of their medical opinions were "affected" and therefore not
20   entitled to any weight.    (AR 31).

21

22      As discussed more fully below, the Court finds that the
23   ALJ's reasons for rejecting Dr. Bergey's opinions were not
24   "specific and legitimate reasons."    As such, remand is required.

25

26

27

28

14

### A. The ALJ Erred In Rejecting Dr. Bergey's Opinion On The Grounds That Plaintiff Showed "Some Improvement"

The ALJ rejected Dr. Bergey's opinion because "[a]fter surgery, physical examinations showed some improvement with [Plaintiff's] lumbar spine." (AR 30). The ALJ cites to Dr. Bergey's treatment notes from October 2012 through April 2013 indicating that Plaintiff "stopped exhibiting diminished sensation, but continued showing lumbar paravertebral tenderness." (Id.). While those treatment notes reflect that Plaintiff stopped exhibiting diminished sensation of the lumbar spine, the ALJ fails to mention that those same treatment notes and other notes in the record also show that Plaintiff's back pain continued to be severe and constant. Moreover, Plaintiff struggled with other significant impairments, which did not show improvement or stabilization. For example, even after the surgery, Plaintiff frequently complained of low back pain, low back stiffness and/or numbness in the lower extremities, for which Dr. Bergey continued to evaluate and treat Plaintiff for until 2013. (AR 209, 214, 218, 226, 264, 299, 307, 406, 415, 425, 434, 439, 445).

Dr. Bergey also treated Plaintiff for neck, bilateral shoulder and right hand impairments. (AR 209, 213-14, 218, 299, 307, 406, 415, 425, 430, 434, 439, 444-45). With respect to Plaintiff's cervical spine and upper extremities, Dr. Bergey observed tenderness of the muscles, reduced range of motion and no bilateral bicep reflexes. (AR 209, 214-15, 219, 264, 300,

15

309, 434, 439-40, 445).   Plaintiff was diagnosed with cervical strain, C6 spinous process fracture, C3-4 disc degeneration, and C3-4 facet arthropathy.   (AR 211, 215, 302, 311, 407, 416, 426, 430-31, 441, 446).   With respect to Plaintiff's shoulders, Dr. Bergey found tenderness of the muscles (AR 406, 434, 440, 445) and pain with a range of motion (AR 425, 430, 434).   Plaintiff's shoulders also exhibited "[m]ildly positive impingement sign bilaterally, positive Tinel's sign on the right" and "[n]umbness in the median nerve distribution."   (AR 406; see also AR 416, 425, 430).   An MRI of Plaintiff's right shoulder showed mild supraspinatus and infraspinatus tendinosis, tearing of the posterior superior posterior labrum with adjacent para labral cyst, and moderate AC arthrosis.   (AR 407, 416).   Plaintiff was diagnosed with bilateral shoulder impingement syndrome.   (AR 407, 417, 426, 431).   With respect to Plaintiff's right hand, Dr. Bergey observed that an "EMG show[ed] right carpal tunnel, which continues to inhibit the use of [Plaintiff's] right hand in an effective manner."   (AR 408).   To treat Plaintiff's impairments, Dr. Bergey prescribed pain management, injections, physical therapy, radiofrequency ablation, narcotic pain medications and surgery.   (AR 265, 292, 301-02, 308, 312, 406, 408, 415, 417, 425, 430, 435-36, 441, 446).

Between February 2012 and January 2013, Dr. Bergey opined that Plaintiff was "temporarily partially disabled" and "prescribed modified duty" of "[n]o lifting, pushing, pulling greater than 10lbs," "[n]o overhead work," and "[n]o climbing. (AR 292, 303, 312, 436, 447).   In March 2013, Dr. Bergey declared

1   Plaintiff "temporarily totally disabled" due to "ongoing back/leg
2   pain, intolerance to extensive sitting or standing, gradually
3   worsening bilateral shoulder complaints pending diagnostic
4   imaging, left carpal tunnel syndrome status post surgery, and
5   active dominant hand, right carpal tunnel syndrome" and because
6   Plaintiff would be "unable to participate without significantly
7   increasing his medications." (AR 426). Finally, in April 2013,
8   due to Plaintiff's persistent shoulder pain and right hand carpal
9   tunnel and the ineffectiveness of conservative treatment, Dr.
10  Bergey recommended that Plaintiff undergo surgery for his right
11  shoulder and a right carpal tunnel release. (AR 408, 431).
12  While there may have been "some improvement," Plaintiff still
13  suffered from considerable pain and significant impairments.

14

15      Thus, the ALJ's reliance on a finding of "some improvement"
16  to reject Dr. Bergey's opinions reflects an overly selective
17  reading of the record. This selective reading of the record
18  fails to constitute substantial evidence to discredit Dr.
19  Bergey's opinion. See Reddick, 157 F.3d at 723 (it is
20  impermissible for the ALJ to develop an evidentiary basis by "not
21  fully accounting for the context of materials or all parts of the
22  testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456
23  (9th Cir. 1984) (an ALJ may not reach a conclusion and justify it
24  by ignoring competent evidence in the record that would suggest
25  an opposite result). Accordingly, the finding that Plaintiff had
26  "some improvement" after surgery is not a legitimate reason to

27

28

17

1   reject Dr. Bergey's opinion, as Plaintiff continued to suffer

2   from serious and constant pain and limitations, as documented in

3   the medical evidence.

4

5   **B. The ALJ Erred In Rejecting Dr. Bergey's Opinion On The**

6      **Grounds That Plaintiff Received Only "Conservative**

7      **Treatment"**

8

9       Second, the ALJ's characterization of Plaintiff receiving

10  only "conservative treatment" after surgery was not a legitimate

11  reason to reject Dr. Bergey's opinion. (AR 30-31). The record

12  reflects that even after his surgery, Plaintiff saw Dr. Bergey

13  quite regularly until April 2013. (AR 208-17, 222-29, 290-313,

14  405-09, 414-18, 424-43, 444-47). Dr. Bergey requested

15  authorization for trigger point injections on several occasions.

16  (AR 211, 292, 302, 312, 417). He also recommended physical

17  therapy, radiofrequency ablation, and regularly prescribed

18  various narcotic pain medications, including Dilaudid, Percocet,

19  Nucynta, and Oxycodone. (AR 308, 301-02, 292, 308, 301-02, 406,

20  415, 425, 430, 435, 438, 441, 446). These prescribed medications

21  are narcotic pain medications, as opposed to more conservative

22  non-narcotic pain medication that could have been prescribed if

23  Plaintiff's pain was not severe.

24

25      The Court notes that even if the characterization of

26  Plaintiff's immediate post-surgical care as "conservative

27  treatment" could be viewed as legitimate, the treatment itself

28  was not effective in resolving Plaintiff's symptoms, and Dr.

1   Bergey recommended more surgery.  In his April 9, 2013 treatment
2   note, Dr. Bergey expressly stated that the treatment for
3   Plaintiff - including injections, physical therapy, medications,
4   bracing, and a modified lifestyle - failed to address Plaintiff's
5   severe shoulder pain and right carpal tunnel syndrome. (AR 408).
6   Dr. Bergey therefore recommended that Plaintiff undergo
7   additional surgery for both impairments.  (AR 408, 431).
8   Additional surgery is not "conservative treatment."  Whether the
9   initial treatment was or was not conservative, it did not
10  successfully treat Plaintiff's pain and impairments.  Thus, the
11  ALJ's reliance on "conservative treatment" to reject Dr. Bergey's
12  opinion was not a legitimate reason.

13

14      **C. The ALJ Erred In Rejecting Dr. Bergey's Opinion On The**
15          **Grounds That His Opinion Was Inconsistent With**
16          **Plaintiff's Statements**

17

18      Third, the ALJ rejected Dr. Bergey's opinion because
19  Plaintiff "acknowledged he stopped taking pain medications in
20  December 2011 and was able to perform household chores" and he
21  "admitted lumbar surgery decreased his back pain."  (AR 31).
22  However, the Court disagrees with the characterization of
23  Plaintiff's statements.  The ALJ cites to Dr. Bergey's December
24  2011 report which noted:

25

26      [Plaintiff] believes the back surgery helped him.  He
27      stopped taking medication in December 2011 to see how
28      he felt.  He has performed housecleaning such as

19

sweeping, mopping and vacuuming.  He had increased pain and started taking medication and could do his "chores".  He does not feel he could return to work, since he would have to work quickly and perform repetitive reaching and pulling/pushing equipment, using tools, etc.

(AR 308).  Thus, when read in context, although Plaintiff attempted to stop taking his medication in December 2011, he was unsuccessful due to increased pain after performing household chores, and had to reinitiate taking his medication so that he could do his household chores.  Moreover, the record is replete with evidence that subsequent to December 2011, Plaintiff continued to take narcotic pain medications.  (AR 292, 301, 308, 406, 415, 425, 430, 435, 438, 441, 446).  The record also reflects that Plaintiff continually complained of low back pain after the surgery.  (AR 299, 307, 406, 415, 425, 434, 439, 445).  Accordingly, the ALJ's selective reading of Plaintiff's statements does not constitute a specific and legitimate reason supported by substantial evidence for rejecting Dr. Bergey's opinion.  See Reddick, 157 F.3d at 723; Gallant, 753 F.2d at 1456.

**D. The ALJ Erred In Rejecting Dr. Bergey's Opinion On The Grounds That Dr. Bergey Examined Plaintiff "In The Context Of A Workers' Compensation Claim"**

Finally, the ALJ did not give Dr. Bergey's opinion "regarding [Plaintiff's] functional limitations any weight" because, according to the ALJ, Dr. Bergey examined Plaintiff "solely in the context of a workers' compensation claim." (AR 31). As an initial matter, "the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).

Although "[t]he categories of work under the social security scheme are measured quite differently" than under the state workers' compensation scheme, Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988), an ALJ must give a medical opinion prepared for a workers' compensation case proper consideration. See Lester, 81 F.3d at 832 (the purpose for which medical reports are obtained alone is not a legitimate basis to reject such reports).

Although Dr. Bergey may have treated Plaintiff within a workers' compensation context, Dr. Bergey was also Plaintiff's treating physician for a number of years. A treating physician is defined as the claimant's own physician who has provided or continues to provide the claimant with medical treatment or

evaluation in an ongoing treatment relationship.  <u>See</u> 20 C.F.R. §
404.1502.  A relationship between a physician and a patient is
considered an ongoing relationship "when the medical evidence
establishes that [the patient] see[s], or [has] seen, the source
with a frequency consistent with accepted medical practice for
the type of treatment and/or evaluation required for [the
patient's] type of medical condition(s)."  <u>Id.</u>  As noted above,
the evidence reflects that Dr. Bergey provided extensive medical
treatment for Plaintiff's impairments on a continual and
consistent basis for a period of almost three years.  As the
treating physician, Dr. Bergey's findings and treatment notes
should have been given the greatest weight by the ALJ.
Therefore, the fact that Dr. Bergey may have initiated his
treatment of Plaintiff in the "context of a workers compensation
claim" does not change the fact that Dr. Bergey ultimately became
Plaintiff's treating physician.

     Because the ALJ failed to provide specific and legitimate
reasons for rejecting the treating physician's opinion, or,
instead, to fully credit the opinion, the case must be remanded
to remedy this defect.  Upon remand, the ALJ must either provide
specific and legitimate reasons to reject Dr. Bergey's opinion or
incorporate the limitations provided by Dr. Bergey's opinion into
the RFC determination.

**VII.**

**CONCLUSION**

Accordingly, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 5, 2016

/S/ _____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**